UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY FRANKLIN,<br>         Defendant. | Crim. No. 07-178 (JDB) |

GOVERNMENT'S OPPOSITION TO
DEFENDANT'S MOTION TO SUPPRESS STATEMENTS

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this opposition to defendant's Motion to Suppress Statements. In support of this opposition, the United States relies on the following points and authorities and such other points and authorities as may be cited at a hearing regarding these motions.

I.      Factual Background

On June 19, 2007 at approximately 2:35 p.m., Officer Juan Johnson and Helen Andrews of the Metropolitan Police Department were on patrol in the alley behind the 1300 block of Staples Street, NE when they heard what sounded like a car crash coming from behind them. Ofc. Johnson and Ofc. Andrews then saw the defendant running away from where scene of the accident and into an alley behind the 1400 block of Staples Street, NE. Ofc. Johnson and Ofc. Andrews pursued the defendant and were able to trap him in the alley when they observed the defendant remove from his waistband a silver in color semi-automatic handgun and toss that handgun to the ground. The defendant was arrested and a silver and black Ruger .45 caliber semi-automatic handgun, serial number 66381815 was recovered a few feet away from where the defendant was seen tossing it.

The defendant was then brought back to the MPD 5th District station, and he was advised of his Miranda[1] rights by Detective Stein. After being advised of his Miranda rights, acknowledging that he understood them and waiving his right to remain silent and counsel, the defendant eventually admitted to tossing the gun and also admitted to stealing the gun from a parked car in the Chinatown area of Washington, DC a few weeks before. A trace of the gun by the Bureau of Alcohol, Tobacco, and Firearms revealed that the gun had been stolen from the original owner's parked car when he was in the downtown Washington, DC area in early June 2007.

## II. The Officers Had Reasonable, Articulable Suspicion to Stop Defendant, and Probable Cause to Arrest Him.

Terry v. Ohio, 392 U.S. 1 (1968) permits police officers to temporarily "seize" a person under certain circumstances, namely in brief encounters between a citizen and the police on public streets, which require swift action because of observations the officer has made. Id. at 20. The officer may briefly "seize," or detain the citizen if he has a reasonable, articulable suspicion that "criminal activity may be afoot." Id. at 30. The officer need not be certain that the citizen is engaged in criminal activity; reasonable suspicion "is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence." Illinois v. Wardlow, 528 U.S. 119, 123 (2000). Thus, a Terry stop may be conducted simply "on the need to 'check out' a reasonable suspicion." United States v. Clark, 24 F.3d 299, 303 (D.C. Cir. 1994).

Because such a stop may occur on a reasonable suspicion, whether such suspicion existed in a particular situation is determined by the totality of the circumstances. Courts may not scrutinize each possible factor upon which the officer relied on in a separate and distinct manner.

---

[1] Miranda v. Arizona, 384 U.S. 436 (1966)

United States v. Sokolow, 490 U.S. 1, 8-9 (1989).  "An officer on the beat does not encounter discrete, hermetically sealed facts," and for that reason while "a single factor might not itself be sufficiently probative of wrongdoing to give rise to a reasonable suspicion, the combination of several factors – especially when viewed through the eyes of an experienced officer – may." United States v. Edmonds, 240 F.3d 55, 59-60 (D.C. Cir. 2001).

     Defendant argues that the officers lacked probable cause to arrest him, and therefore that his statements to the police must be suppressed as the fruits of an illegal seizure.  "Probable cause to arrest requires the existence of facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person in believing that the suspect has committed, is committing, or is about to commit an offense."  United States v. Wesley, 293 F.3d 541, 545 (D.C. Cir. 2002) (quotations and citations omitted) .  The probable cause standard merely requires the showing of a "fair probability" that a crime has been or is being committed.  See Illinois v. Gates, 462 U.S. 213, 246 (1983) ("probable cause does not demand the certainty we associate with formal trials[;] [i]t is enough that there was a fair probability").  If the police have probable cause for an arrest, they may make a full search of the arrestee and the area within the arrestee's immediate control at the time of the arrest.  Chimel v. California, 395 U.S. 752, 763 (1969).

     In the instant case, the officers observed the defendant fleeing from the scene of an acident.  They then observed him tossing a handgun. At that moment, the police had probable cause to arrest him for illegally possessing that handgun.  Once probable cause had been established, the officers were able to arrest the defendant.

**III.     Defendant's Statements Do Not Violate Miranda.**

The defendant executed a waiver of his Miranda rights and provided an oral statement to the Detective Stein.  This statement was recorded on a videotape.  The defendant's oral statement is admissible because although he was in custody and was being interrogated, he had waived his Miranda rights.

The government does not dispute that the defendant was in custody, and that he was interrogated.  Thus the only question remaining is whether he was given his Miranda rights, and whether he knowingly and intelligently waived them.  It is well-settled that a defendant may waive his Miranda rights and provide a statement to the police, as long as that waiver was knowing and intelligent, and if the government can prove, by a preponderance of the evidence, that the waiver was knowing and intelligent, the statement is admissible at trial.  Miranda, 384 at 443; Missouri v. Seibert, 542 U.S. 600 (2004).

The government is prepared to present evidence that the defendant knowingly and intelligently waived his Miranda rights and provided a voluntary, oral statement to law enforcement, which is thereby admissible at trial.

**IV.     The Defendant's Statements Were Voluntary**

Defendant asserts that his statements were involuntary; thus, the government must establish by preponderance of the evidence that the statements were voluntary.  See Lego v. Twomey, 404 U.S. 477, 489 (1972).  To determine whether a statement was voluntarily made, this Court must examine the totality of the circumstances to determine whether the defendant's "will has been overborne and [her] capacity for self-determination critically impaired."  See Schneckloth v. Bustamonte, 412 U.S. 218, 225 (1973); Colorado v. Connelly, 479 U.S. 157, 167 (1986).  "Without a showing of coercive police activity . . . there is not a basis for concluding

4

that [a defendant's] confession was involuntary . . . ." Martin v. United States, 567 A.2d 896, 908 (D.C. 1989).

The government expects that, if a hearing is held on this matter, the totality of circumstances would demonstrate that defendant's statement was voluntarily made, and that his will was not overborne. The defendant identifies no coercive police activity, and the circumstances of defendant's statement do not suggest that it was the product of coercive police activity, or was in any other way involuntary. The defendant was advised of his Miranda rights and gave a knowing, voluntary waiver, and was treated professionally at all times.

In cases with much starker circumstances than those in this case, the courts have found statements to be voluntary. See, e.g., Bliss v. United States, 445 A.2d 625, 631-32 (D.C. 1982) (defendant was in pain from gunshot wound, had little food or sleep, but it was a flesh wound, there was little blood, and he was able to answer questions), cert. denied, 459 U.S. 1117 (1983); Harris v. Dugger, 874 F.2d 756, 759-62 (11th Cir.) (confession voluntary even though defendant in forearm cast and handcuffed during six-hour interrogation), cert. denied, 493 U.S. 1011 (1989); United States v. Leon Guerrero, 847 F.2d 1363 (9th Cir. 1988) (promises that cooperation would be communicated to prosecutors insufficient to overcome will); United States v. Yunis, 273 U.S. App. D.C. 290, 298, 859 F.2d 953, 961 (1988) (defendant's seasickness, his uncomfortably hot room, and his unfamiliarity with American legal culture not a legally adequate basis for concluding that confession was involuntary); United States v. Pelton, 835 F.2d 1067 (4th Cir. 1987) (FBI agent's assertion that agent would launch full-scale investigation if defendant did not cooperate not sufficient to render statements involuntary), cert. denied, 486 U.S. 1010 (1988).

WHEREFORE, the government respectfully requests that the Court deny the defendant's motion to suppress statements.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY

_____/s/_____
LOUIS RAMOS
ASSISTANT UNITED STATES ATTORNEY
D.C. Bar No. 472-176
U.S. Attorney's Office for the District of Columbia
555 4th Street, N.W., Room 4243
Washington, DC 20530
(202) 305-2195   FAX:  (202) 305-2195
louis.ramos@usdoj.gov